# Exhibit A

Evan L. Goldman, Esq., #001871979
**GOLDMAN DAVIS KRUMHOLZ & DILLON, P.C.**
**Three University Plaza, Suite 410**
**Hackensack, New Jersey 07601**
**(201) 488-2600**
**(201) 488-5059 (Fax)**
**Attorneys for Plaintiff, Teri Sanders**

|  |  |
|---|---|
| TERI SANDERS,<br><br>Plaintiff<br><br>v.<br><br>THE TRUSTEES AT PRINCETON UNIVERSITY d/b/a PRINCETON UNIVERSITY, and MICHAEL HOTCHKISS, individually and in his official capacity.<br><br>Defendant(s) | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION : COUNTY OF MERCER<br><br>DOCKET NO.:<br><br>Civil Action<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, TERI SANDERS, **(**hereinafter "Plaintiff" or "Ms. Sanders"), complaining of the

Defendants THE TRUSTEES AT PRINCETON UNIVERISTY d/b/a PRINCETON

UNIVERISTY (hereinafter "Princeton" or "Defendant"), and Individual Defendant (MICHAEL

HOTCHKISS ("hereinafter "Hotchkiss" or "Defendant") individually and in her official capacity

says:

## FACTS COMMON TO ALL CLAIMS

1.      Plaintiff, Teri Sanders, is an African American female, who resides in Long

Island City, State of New York.

2.      Defendant, The Trustees at Princeton University d/b/a Princeton University is an

educational institution with a principal place of business located at 701 Carnegie Center,

Princeton, New Jersey 08540.

3.     During all relevant times, Individual Defendant Michael Hotchkiss, a Caucasian Male, was employed by Defendant Princeton as the Assistant Vice President for Communications in Princeton, New Jersey, and a member of upper management, with the authority to control the Plaintiff's workplace, hire, fire, discipline, and direct the Plaintiff.

4.     Individual Defendant Michael Hotchkiss is a resident of New Jersey and currently resides in the Borough of Atlantic Highlands New Jersey.

5.     Ms. Sanders was employed as a Group Creative Director in the Office of Communications at Defendants, Princeton University, from approximately April 2021 until the termination of her employment on or about November 17, 2025.

6.     During all times relevant to the within matter, Ms. Sanders was an "employee" of Princeton University as that term is defined under the New Jersey Law Against Discrimination (NJ LAD), N.J.S.A. 10:5-1 *et.seq.,* and performed her job in accordance with the expectations of her employer and was paid wages in accordance therewith.

7.     At all relevant times, Defendants were Plaintiff's "employer" as that term is defined under the NJ LAD, N.J.S.A. 10:5-1 *et.seq.*.

8.     Prior to joining Princeton University, Ms. Sanders, who is a Black woman, had developed a reputation as an outstanding art director, working successfully for such major companies as IBM, Time and the Wall Street Journal.

9.     At all relevant times, Ms. Sanders was the only Black person employed on the leadership team of the Office of Communications at Princeton University. All of Ms. Sanders' peers were white, except for one Southeast Asian woman.

10.     Throughout her tenure at Princeton, Ms. Sanders was a highly successful Director who always received positive performance evaluations.

2

11.     In her most recent review for the period March 2023 to March 2024, she was rated as having "fully achieved" expectations and that her performance was aligned with Princeton's values.

12.     In that review, her "creative vision" was recognized for having "been important to so many of the successes in the Office of Communications over the past year, including but not limited to the refreshed University branding, storytelling such as the microscopy feature, and publications such as the DEI report."

13.     During her tenure at Princeton, Ms. Sanders introduced new creative software and streamlined workflows, conceived of and directed the design and production of flagship through-leadership reports, led large-scale University photography projects, and identified gaps in the creative personnel team and obtained senior leadership approval for key hires.

14.     Plaintiff's work was often praised by colleagues inside and outside the Communications Department.

15.     Although Ms. Sanders was an obvious asset to Princeton, she was subjected to discrimination based on her race, which culminated in her termination on or around November 15, 2025.

16.     Shortly after Plaintiff was hired into the Princeton Office of Communications, she encountered discrimination based on her race directly and indirectly by both her superiors and her peers.

17.     In a staff meeting which included members of the social, video, project management, and PR teams, David Burden shared a story about a "DEI" hire from a previous position. He described how that employee eventually resigned because they supposedly were "unable to keep up" with or understand the assignments. Ms. Sanders was the only Black person

in the room during this staff meeting and perceived the story as derogatory towards her and a form of "dog-whistle" messaging directed toward the other white staff members.

18.     In a different meeting, Burden stated on a number of occasions, regarding efforts to overcome a racially discriminatory legacy at Princeton, that he was tired of the "woke bullshit."

19.     Mr. Burden was then replaced by Individual Defendant Hotchkiss, a good friend of Burden.

20.     Immediately after Defendant Hotchkiss began in the role of Assistant Vice President for Communications, he was dismissive toward Ms. Sanders and showed favoritism for the other white employees in the department.

21.     Defendant Hotchkiss routinely ignored Ms. Sanders in the departmental meetings which he chaired, failed to make eye contact with her, and rarely spoke to her outside of their very short (usually 5 minutes or less) weekly meetings.

22.     Defendant Hotchkiss' treatment of Ms. Sanders was in marked contrast to the way he interacted with and treated her white peers.

23.     During her tenure at Princeton, Ms. Sanders experienced discrimination based on her race by a white woman, Becky Batcha. Batcha was in charge of Editorial within the same department as Ms. Sanders and also supervised by Defendant Hotchkiss.

24.     Batcha used a racist term in a conversation with Ms. Sanders when she said "I am glad you're not blackwashing the publicity materials". Batcha indicated she was pleased that Ms. Sanders was not using publicity pictures which included persons of color.

4

25. Batcha's hypersensitivity to the supposed "under-representation" of white people in the Princeton promotional materials and her concern that Ms. Sanders might, in fact, diminish the presence of white people, was offensive and discriminatory to Ms. Sanders.

26. Ms. Sanders informed her superiors of this racist behavior, but nothing was done.

27. Subsequent to this episode, Ms. Batcha routinely disregarded Ms. Sanders' authority by directing Ms. Sanders' team members to do things differently than Ms. Sanders had instructed. Batch did not bother to consult with or obtain the permission of Ms. Sanders before issuing her contrary orders. Batcha did this in discrimination against Ms. Sanders due to her race.

28. Following repeated instances of Batcha improperly abusing authority over Ms. Sanders' team, Plaintiff spoke to Batcha and politely asked her to respect her professional boundaries.

29. Batcha further discriminated against the Plaintiff based on her race when she complained to Defendant Hotchkiss about Ms. Sanders' and used a "tone" in regard to the conversation, suggesting that Ms. Sanders' tone was somehow inappropriate.

30. When confronted by Defendant Hotchkiss about the matter, Ms. Sanders informed Defendant Hotchkiss of the discrimination she was experiencing by Batcha, however, Defendant Hotchkiss only contributed and increased the discrimination Ms. Sanders was subject to by supporting Batcha, not Ms. Sanders.

31. After Ms. Sanders informed Defendant Hotchkiss of the discrimination she was being subject to based on her race, Hotchkiss issued a performance review of Ms. Sanders in or around March 2024.

32. In the March 2024 performance review, Defendant Hotchkiss unfairly and inaccurately criticized Ms. Sanders' work and again faulted her for the problems she had raised

5

about Ms. Batcha. Rather than addressing the discriminatory behavior towards her, Defendant Hotchkiss blamed Ms. Sanders for it. In doing so, he validated and encouraged the ongoing discrimination against Ms. Sanders based on her race.

33. Batcha continued to target and discriminate against and act in antagonistic ways towards Ms. Sanders.

34. Individual Defendant Hotchkiss regularly ate lunch with Ms. Batcha and, although Ms. Sanders continued to bring complaints of discriminatory treatment by Ms. Batcha to his attention, Hotchkiss always sided with Batcha when the issues arose and continued to fault the Plaintiff.

35. Ms. Sanders also reported discriminatory behavior by her subordinate, Sean Gallagher, to Defendant Hotchkiss, however he did nothing to address the situation, further encouraging the discrimination to continue against Ms. Sanders due to her race.

36. Due to the racist and hostile environment she was being subjected to, Ms. Sanders reached out to human resources on several occasions to seek help.

37. On an approximately monthly basis, Ms. Sanders spoke with Katrina Garthe, a generalist in the human resources department, regarding the discrimination she was being subjected to base on her race. Ms. Sanders explained further that she felt she was being targeted by Defendant Hotchkiss and could not bring work issues to him because of his discriminatory behavior towards her. However, nothing was done to address her concerns.

38. Specifically, Ms. Sanders made several complaints of discrimination, including but not limited to: Defendant Hotchkiss assigned a white employee a parking spot and refused to provide the same to Ms. Sanders

39. In or around April 2024, Ms. Sanders wrote to bias@princeton.edu that she wanted to report racial discrimination by her supervisor and explicitly requested that Defendant Hotchkiss be investigated.

40. Upon information and belief, Cheri Burgess, the Director for Institutional Equity and EEO at Princeton University, was notified of Ms. Sanders' complaint, however no investigation was undertaken.

41. In retaliation for her reports, Ms. Sanders faced worsening treatment by Defendant Hotchkiss as he further alienated and discriminated against her.

42. On or about October 15, 2025, Plaintiff was notified that there was going to be a reduction in force within the Office of Communications and that her position as Group Creative Director was being eliminated and her last day of employment with the University would be on November 17, 2025.

43. Although Defendants characterized the elimination of Ms. Sanders' position as a "reduction in force" no other position on the team she supervised was eliminated and all six (6) of the staff members reporting directly to Plaintiff were retained.

44. Only one other position in the Office of Communication was eliminated and this supposed "reduction in force". The other position eliminated was the Head of Video, a position held by Daniella Caparella, a white woman.

45. Daniella Caparella was then offered the position of a new position which was created in the Office of Communications, Associate Director of Multimedia. Ms. Sanders was not similarly offered a different position.

46. The supposed "reduction in force" which resulted in the hiring of her white counterpart, Daniella Caparella, was nothing more than a thinly disguised pretext for the

7

termination of Ms. Sander, the only Black professional in the Office of Communications at Princeton.

## FIRST COUNT
## RACE DISCRIMINATION AND/OR HARASSMENT
## New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et.seq.*
### (As to All Defendants)

47.     Plaintiff, Teri Sanders, repeats and realleges and incorporates herein by reference the previous paragraphs set forth in this Complaint as if fully set forth at length herein.

48.     This conduct, including but not limited to the termination of Ms. Sanders, would not have occurred but for Ms. Sanders' Race, as an African American, in violation of the NJ LAD, N.J. S.A. 10:5- 1 *et.seq.*

49.     The foregoing facts and circumstances demonstrate that Defendants have violated the Law Against Discrimination, N.J.S.A. 10:5-1 *et. seq.* by engaging in acts of Racial Discrimination and/or Harassment.

**WHEREFORE,** the Plaintiff demands judgment against any and all of said defendants, jointly and individually, for harm suffered as a result of defendants Race Discrimination in violation of the principles of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1., *et seq.*, as follows: an award of emotional distress damages, punitive damages, equitable relief, prejudgment interest, attorney fees and cost of suit, with an appropriate enhancement under *Rendine v Pantzer,* 141 N.J. 292 (1995), compensatory damages, statutory damages pursuant to N.J.S.A. 18A:37-13 *et.seq,* and any such other relief determined just and equitable by the Court, on this Count of the Complaint.

## SECOND COUNT

### HOSTILE WORK ENVIRONMENT AND RETALIATION
### (As to All Defendants)

50.     Plaintiff repeats and realleges each of the foregoing allegations as though fully set forth at length herein.

51.     Defendants subjected Plaintiff to a continuing pattern of harassment and intimidation which created a hostile work environment during the course of her employment. This conduct would not have occurred but for Plaintiff's Race, as an African American, in violation of the NJ LAD.

52.     The hostile work environment was ongoing, and continued unabated despite Plaintiff's complaints and would not have occurred but for Plaintiff's Race, and such conduct has been severe or pervasive such that a reasonable person would believe that the conditions of her employment were altered, and the work environment was intimidating, hostile or abusive.

53.     Defendant Hotchkiss knew or should have known of the harassment and failed to take effective remedial measures to stop it.

54.     Defendant Hotchkiss had the authority to control the working environment of the Plaintiff and abused that authority to create a hostile work environment.

55.     Defendants negligently, recklessly, and/or intentionally:

   a.  Failed to have in place well-publicized and enforced anti-discrimination policies.

   b.  Failed to properly train its employees regarding compliance with anti-discrimination policies.

   c.  Failed to properly supervise its employees to ensure compliance with anti-discrimination policies.

9

  d. Failed to make an unequivocal commitment from the top of the organization making clear that any anti-discrimination policy is not just words but is backed up by consistent practice.

56. Defendant Princeton University was responsible for the harassing conduct by Plaintiff's superiors, including Individual Defendant Hotchkiss, who was an upper-level manager, and therefore has *respondeat superior* liability.

57. The conduct of Defendants against the Plaintiff based on her Race as an African constituted Race Discrimination in violation of the NJ LAD, N.J.S.A. 10:5-1 *et.seq.*

58. As a direct and proximate result of the actions of the defendants as aforesaid, Plaintiff was caused to sustain a loss of employment and income and was caused to sustain emotional and psychological distress and harm, embarrassment, and a continuous and permanent interference with the prospect of future economic advantage and with the ability to obtain future employment.

**WHEREFORE**, Plaintiff demands judgment against any and all of said defendants, jointly and individually, for harm suffered as a result of defendants' violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et. seq.* as follows:  an award of compensatory damages, including but not limited to, back pay and benefits, front pay and benefits, consequential damages, punitive damages, emotional distress damages, equitable  relief, prejudgment interest, attorney fees, cost of suit, and expenses with an appropriate enhancement under *Rendine v. Pantzer*, 141 N.J. 292 (1995), on this Count of the Complaint.

## THIRD COUNT

### (Aiding and Abetting Illegal Discrimination NJ LAD N.J.S.A. 10:5-1 *et.seq)*
### (As to Michael Hotchkiss)

59.     Plaintiff repeats the allegations in the previous Counts of the Complaint and incorporates same herein by reference as if fully set forth at length herein.

60.     The NJ LAD prohibits conduct that aids or abets unlawful discrimination. Defendant Michael Hotchkiss as the Assistant Vice President of Communications at Princeton was an upper-level manager, supervisor, and decision-maker regarding Plaintiff, and he was responsible for ensuring a workplace free of discrimination.

61.     Defendants Hotchkiss knowingly and substantially assisted Princeton University in its violation of the NJ LAD by aiding and abetting discrimination against Plaintiff.

62.     At all times relevant hereto, Defendant Hotchkiss acted within the scope of his employment with Princeton University and, as a result, Princeton has *respondeat superior* liability.

63.     Defendants Hotchkiss intentionally and wrongfully aided and abetted Princeton's aforesaid violation and his own violation of the NJ LAD, N.J.S.A. 10:5-1 *et. seq.* by creating and maintaining a discriminatory environment and by engaging in a pattern and practice of unlawful discrimination against Plaintiff based upon her Race.

64.     As a direct and proximate result of the actions of the defendants as aforesaid, Plaintiff was caused to sustain a loss of employment and income and was caused to sustain emotional and psychological distress and harm, embarrassment, and a continuous and permanent interference with the prospect of future economic advantage and with the ability to obtain future employment.

11

**WHEREFORE**, Plaintiff demands judgment against any and all of said defendants, jointly and individually, for harm suffered as a result of defendants' violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et. seq*. as follows:  an award of compensatory damages, including but not limited to, back pay and benefits, front pay and benefits, consequential damages, punitive damages, emotional distress damages, equitable  relief, prejudgment interest, attorney fees, cost of suit, and expenses with an appropriate enhancement under *Rendine v. Pantzer*, 141 N.J. 292 (1995), on this Count of the Complaint.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues herein pursuant to R.1:8-2(b) and R.4:35-1(a).

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to R.4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the Judgment.  If so, please attach a copy of each, or in the alternative state, under oath and certification: (a) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all person insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

## DOCUMENT DEMAND

1. Complete personnel file for Plaintiff Teri Sanders, including but not limited to employment applications, offer letters, job descriptions, wage and compensation records,

disciplinary records, attendance records, promotions, demotions, evaluations, separation documents, and any acknowledgments signed by Plaintiff.

2. Any and all written disciplinary actions, warnings, counseling memoranda, probation notices, corrective action forms, or similar documents relating to either Plaintiff.

3. Any and all employee handbooks, policy manuals, anti-harassment policies, antidiscrimination policies, complaint procedures, codes of conduct, workplace violence policies, and written guidelines in effect from January 2021 through November 2025.

## DEMAND FOR DOCUMENTS TO WHICH ANSWER REFERS

Pursuant to Rule 4:18-2, Plaintiff hereby demands that Defendant produce copies of each and every document or paper to which the Answer refers within five days after service of the Answer.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Evan L. Goldman is hereby designated as trial counsel for Plaintiff in the within matter.

## CERTIFICATION OF NO OTHER ACTIONS

Pursuant to R.4:5-1, it is hereby certified that, to the best of our knowledge and belief, the matter in controversy is not the subject of any other action pending in any other Court or of a pending Arbitration proceeding. Also, to the best of our knowledge and belief, no other action or Arbitration proceeding is contemplated. Further, other than the parties set forth in this pleading, at the present time we know of no other parties that should be joined in this action. In addition, we recognize the continuing obligation of each party to file and serve on all parties and the Court an amended certification if there is a change in the facts stated in this original certification.

13

**CERTIFICATION REGARDING PERSONAL IDENTIFIERS**

Pursuant to Rule 1:38-7(c), I certify that confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future in accordance with Rule1:38-7(c).

**DEMAND TO PRESEVE EVIDENCE**

All Defendants are hereby directed and demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's cause of action and/or prayers for relief, to any defenses to same, and pertaining to any party, including but not limited to, electronic data storage, closed circuit TV footages, digital images, computer images, cache memory, searchable data, emails, spread sheets, text messages, employment files, memos, and any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, twitter, MySpace., etc.) and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation. Failure to do so will result in separate claims for spoliation of evidence and/or for appropriate adverse inferences.

GOLDMAN DAVIS
KRUMHOLZ & DILLON, PC
Attorneys for Plaintiff

s/ Evan L. Goldman

Evan L. Goldman, Esq.

May 28, 2026

14